### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **SARA L. ROBERTS** | § | **CAUSE NO.** |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **7:16-cv-342** |
| | § | |
| **BRINKERHOFF INSPECTION, INC.** | § | |
| **D/B/A SMOB** | § | |
| | § | |
| **DEFENDANT.** | § | **JURY DEMANDED** |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**Plaintiff SARA L. ROBERTS f/k/a Sara L. Martin ("Plaintiff")** files this Complaint

and would respectfully show the Court as follows:

### PARTIES

1.      Plaintiff is an individual who currently resides in Midland County, Texas.

2.      **Defendant BRINKERHOFF INSPECTION, INC D/B/A SMOB ("Defendant"**

**or "SMOB")**, is a Texas corporation.  Defendant may be served with process through its registered

agent, Sara Kate Billingsley, 3800 E. 42nd Street, Suite 601, Odessa, Texas 79762.

### JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction

because the action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-

5(f)(3), including the Pregnancy Discrimination Act (PDA), as amended, 42 § 2000e(k).

---

4.      Venue is proper in the U.S. District Court for the Western District of Texas, Midland-Odessa Division pursuant to 42 U.S.C. 1391(b) because the unlawful practices alleged below were committed therein.

5.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims which are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Plaintiff filed this suit within ninety (90) days of receiving a Notice of Right to Sue from the EEOC, a true and correct copy of which is attached hereto as Exhibit A.

## CONDITIONS PRECEDENT

7.      All conditions precedent have been performed or have occurred.

## FACTS

8.      SMOB provides oilfield inspection services.

9.      On or about September 14, 2015, Personnel Director Keith Demby sent Plaintiff a Facebook message to recruit her to be a salesperson.

10.      Initially, Plaintiff was not interested because she had just gotten hired somewhere else and was concerned about job security in the oil field industry.

11.      Demby and Plaintiff talked over the phone later that afternoon.  Demby told Plaintiff that he was going to ask her a question that he asks all of his female candidates.  He then asked Plaintiff if she was "expecting."

---

PLAINTIFF'S COMPLAINT

12.     At first, Plaintiff said no because she was taken aback because she was only four weeks pregnant.

13.     Demby said, "a little birdie told me you are."  Plaintiff responded that she took a positive test, but that she has had an abortion and several miscarriages and believed the pregnancy was high risk.

14.     Plaintiff asked Demby if it was a problem that she was pregnant.  He said no.

15.     Demby convinced Plaintiff to come in for an interview.  He told her that the sales experience she would gain would be a great opportunity and that she would be trained by one of the top sales persons in Midland.  He told her not to worry about the job security; it was a great opportunity.

16.     On or about September 15, 2015, Plaintiff was interviewed by Demby, CEO Bront Bird, CEO Luke Bird, Sales Manager Becca Nobles, and Vice President Steven Sheffield.

17.     During the interview, Plaintiff was told that Defendant needed help with sales and that not all of their rigs were being seen, thus half of the rigs would be seen by Plaintiff and the other half would be see by Field Sales Representative Olivia Delburn.

18.     Plaintiff voiced her concerns about job security in the oil field industry.  Plaintiff was assured that Defendant was busy and she would have job security.

19.     President Bront Bird told Plaintiff she could easily make $7000-$10,000 per month with commissions.  Her base salary would be about $3,500 per month.

20.     Nobles told Plaintiff that she would train her.  They assured Plaintiff she would receive great training because Nobles, who was the best in the business, would be training her.

21.     Throughout the interview, Defendant stated they were confident that Plaintiff was a perfect fit.

22.     After the interview, Demby walked Plaintiff to her car.  Along the way she asked him if he had told anyone that she was pregnant.  Demby said, "No, you said there was a high chance it wouldn't last."  Plaintiff told him it might not last, but that it might.  Demby told her that it was her business and that she could tell them when she wanted.

23.     Later that afternoon, Plaintiff called Demby to confirm if she got the job.  She told him she had another job offer on the table and had to let them know that day whether or not she would be takin the job.

24.     Demby told her she had the job, and Plaintiff turned down the other job offer.

25.     Plaintiff's official hire date was on or about September 16, 2015.

26.     On or about September 17, 2015, Plaintiff rode along with Demby to learn about the services SMOB provides.  Demby hit on Plaintiff.  He told Plaintiff that she was attractive and that they were going to date.

27.     During her first week, Plaintiff had to leave early for a dentist appointment which had been scheduled for about six months.  When she interviewed for the job, she mentioned the appointment and was told it would not be a problem.

28.     Plaintiff was supposed to train under Sales Manager Becca Nobles.  Nobles  was known as the best sales woman and highest paid sales person in the company.  Nobles was unable to train Plaintiff her first couple of days because of scheduling conflicts, but Nobles assured Plaintiff that she would start training her soon.

29.     For the first few days, Plaintiff was trained by and rode along with Field Sales Representative Olivia Delburn.

30.     Nobles told Plaintiff that she did not want her riding with Delburn because she wanted Plaintiff to learn her sales techniques, and that soon she would be riding with her.

Additionally, Plaintiff received text messages from Nobles implying that Defendant was not confident with Delburn's performance and that Plaintiff would eventually replace her, or at least would be taking over the some of Delburn's rigs and getting the bigger accounts.

31.     Plaintiff rode along with Delburn on or about Septermber 21 and 22, 2015.

32.     Plaintiff's official start date was on or about September 21, 2015.

33.     On or about September 22, 2015, SMOB employees went bowling.  Demby offered Plaintiff a beer.  She declined because she was pregnant.

34.     On or about September 23, 2015, Plaintiff rode with Delburn in the morning but did not ride in the afternoon because Delburn had to go to New Mexcio.  Plaintiff could not go because they were not going to get back until late and Plaintiff had to pick up her kids.

35.     That same day Office Manager K'Cee Ayers made a comment about business cards to Plaintiff.  Plaintiff told her she had a name change because she got married the day before.  Demby overheard the conversation and congratulated Plaintiff.

36.     When Plaintiff rode out with Delburn to start meeting customers, Plaintiff was shy and timid.  She had never been in sales and was intimidated.  She would just observe Delburn; she would not talk unless a customer asked her a question directly.

37.     On September 24, 2015, Plaintiff attended H2S (Hydrogen Sulfide) training in the morning.

38.     Afterwards, Plaintiff had a meeting with Office Manager K'Cee Ayers and Demby.  They told her that SMOB did not have the funds to bring on another sales person because of the decline in the oil field and that they needed sixty to ninety days to reevaluate their funds.  Demby told her that the decision was not performance-related.

39.     After disclosing her recent marriage and pregnancy, Plaintiff was terminated on September 24, 2015, less than a week after her hire date.

40.     Plaintiff had just turned down another job in order to take the job with SMOB. Plaintiff had expressed her concern about the stability of the job and knew she was declining another job.  Everyone assured her that SMOB was busy, stable, and financially confident about bringing her on.

COUNT ONE – SEX HARASSMENT – QUID PRO QUO (TITLE VII)

41.     Plaintiff incorporates by reference and re-alleges all of the foregoing and further alleges as follows:

42.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female.  *See* 42 U.S.C. §2000e-5(f).

43.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

44.     Defendant subjected Plaintiff to *quid pro quo* sexual harassment.  Within one week after Plaintiff rejected sexual advances from Defendant's Personnel Manager Keith Demby, she was fired.  Demby conditioned the terms and condition of employment on an exchange of sexual favors. Defendant is strictly liable for Defendant's actions.

45.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

46.     To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true are only some of the reasons, and Plaintiff's sex was a

motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

### COUNT TWO – SEX DISCRIMINATION (TITLE VII)

47.     Plaintiff incorporates by reference and re-alleges all of the foregoing and further alleges as follows:

48.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female.  *See* 42 U.S.C. §2000e-5(f).

49.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

50.     Defendant intentionally discriminated against Plaintiff by terminating her employment because of sex.

51.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

52.     To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true are only some of the reasons, and Plaintiff's sex was a motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

### COUNT THREE – PREGNANCY DISCRIMINATION (TITLE VII & PDA)

53.     Plaintiff incorporates by reference and re-alleges all of the foregoing and further alleges as follows:

54.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is/was pregnant.  *See* 42 U.S.C. §2000e(k).

55.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

56.     Defendant intentionally discriminated against Plaintiff by terminating her employment because of or on the basis of pregnancy.

57.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

58.     To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true are only some of the reasons, and Plaintiff's sex was a motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

## DAMAGES

59.     Plaintiff was discharged from employment by Defendant.  Although she has diligently sought other employment, she has been unable to find a job at comparable pay.  In addition, Plaintiff has incurred expenses in seeking other employment.  Plaintiff suffered damage to her pension or retirement benefits.  Plaintiff seeks compensation for all back pay and lost wages and benefits, including loss of Social Security benefits.  Reinstatement to Plaintiff's previous position is impractical and unworkable.  Therefore, Plaintiff seeks an award of front pay and future lost wages and benefits.  Plaintiff suffered mental anguish and emotional distress.

## ATTORNEY'S FEES

60.     Plaintiff was forced to engage counsel to protect her rights.  Plaintiff is entitled to an award of attorney's fees and costs (including, but not limited to, an award of reasonable expert witness fees), both trial and appellate, under Title VII, 42 U.S.C. §2000e-5(k).

## INTEREST

61.     Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful

rate.

## JURY TRIAL DEMAND

62. Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the

following:

a.  Compensatory and punitive damages;

b.  Back pay and front pay;

c.  Attorney's fees and costs;

d.  Prejudgment and post-judgment interest;

e.  Such other and further relief, at law or in equity, to which Plaintiff may show herself
    justly and lawfully entitled.

Respectfully submitted,


By:  /s/ Holly B. Williams_____
        Holly B. Williams
        Texas Bar No. 00788674
        Naomi Cobb
        Texas Bar No. 24094592

**WILLIAMS LAW FIRM, P. C.**
1209 W Texas Ave
Midland, TX 79701-6173
432-682-7800
432-682-1112 (fax)
holly@williamslawpc.com
naomi@williamslawpc.com

**ATTORNEYS FOR PLAINTIFF
SARA L. ROBERTS**

EEOC Form 161-B (11/09)

**U.S. EQ~~~. EMPLOYMENT OPPORTUNITY COMMISS~~~**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: **Sara Roberts**<br>**4400 N. Holiday Hill Rd #2007**<br>**Midland, TX 79707** | From: **El Paso Area Office**<br>**300 E. Main Drive, Suite 500**<br>**El Paso, TX 79901** |

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **453-2016-00256** | **Al P. Valdez,**<br>**Investigator** | **(915) 534-4199** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Lucy V. Orta,**
**Area Office Director**

June 30 2016
*(Date Mailed)*

cc: **BRINKERHOFF INSPECTION INC - SMOB SERVICES**
**Human Resources- Ms. Casey**
**PO Box 12422**
**Odessa, TX 79768**

**Attorney- Holly B. Williams**
**WILLIAMS LAW FIRM P.C.**
**1209 W. Texas Ave**
**Midland, TX 79701**

**EXHIBIT A**

RECEIVED
JUL - 5 2016
BY: ___